UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RAY RAMBORGER,  Petitioner,  v.  STOTT FRAUENHEIM,  Respondent. | No. 2:15-cv-0120 KJN P (TEMP)  ORDER |

Petitioner is a state prisoner, proceeding without counsel, with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties in this action have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Petitioner challenges a judgment of conviction entered against him on July 22, 2013, in the Sacramento County Superior Court on charges of possession of methamphetamine for sale, transportation of methamphetamine, possession of heroin for sale, transportation of heroin, and possession of a handgun by a convicted felon, with six prior felony convictions. He seeks federal habeas relief on the grounds that his trial counsel rendered ineffective assistance. Upon careful consideration of the record and the applicable law, the undersigned denies petitioner's application for habeas corpus relief.

/////

/////

# I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Narcotics officers were performing surveillance of defendant, who was out on bail for another crime and was subject to a search condition while on post release community supervision, when they detained defendant and searched the vehicle he was driving. They found 40 grams of methamphetamine and $400 on his person. In the car, they found an additional 130 grams of methamphetamine, seven grams of heroin, numerous baggies, a digital scale, a loaded handgun, and additional ammunition for the gun.
>
> Defendant was charged with possession of methamphetamine for purpose of sale (Health & Saf.Code, § 11378; count 1); transportation of methamphetamine (Health & Saf.Code, § 11379, subd. (a); count 2); possession of heroin for purpose of sale (Health & Saf.Code, § 11351; count 3); transportation of heroin (Health & Saf.Code, § 11352, subd. (a); count 4); possession of a handgun by a convicted felon (Pen.Code, § 29800, subd. (a)(1); count 5; undesignated section references are to the Penal Code); possession of ammunition by a convicted felon (§ 30305, subd. (a)(1); count 6); and receipt of stolen property (§ 496, subd. (a); count 7). As to counts 1 through 4, it was alleged defendant had suffered six prior felony convictions within the meaning of Health and Safety Code section 11370.2, subdivisions (a) and (c), and had served six prior prison terms for those convictions within the meaning of section 667.5, subdivision (b). It was also alleged defendant committed all charged offenses while released on bail relative to another offense within the meaning of section 12022.1.
>
> Defendant pleaded no contest to counts 1 through 5 and admitted the six prior convictions, with the understanding he would be sentenced to prison (with a floor of 18 years eight months and a lid of 24 years eight months) and remaining charges and allegations would be dismissed. At sentencing, the trial court declined to strike any of defendant's prior strikes, determined defendant was ineligible for probation, sentenced defendant to an aggregate term of 24 years eight months, and dismissed the remaining charges and allegations. The aggregate sentence is comprised of: the upper term of five years for count 4; the upper term of three years for count 1, stayed pursuant to section 654; one year (one-third of the middle term) for count 2; four years for count 3, stayed pursuant to section 654; eight months (one-third of the middle term) for count 5; and 6 three-year terms for prior prison terms pursuant to Health and Safety Code section 11370.2, subdivisions (a) and (c).
>
> The court awarded defendant 774 days of credit (387 actual and 387 conduct) pursuant to section 4019. Pursuant to a request from defendant's counsel, the trial court corrected this award to 776 days of credit. The trial court also imposed a restitution fine of $280 (§

> 1202.4), a parole revocation restitution fine of $280 (§ 1202.45), a court operations fee of $200 (§ 1465.8, subd. (a)(1)), and a court facility fee of $150 (Gov.Code, § 70373). The court waived the main jail booking and classification fees enumerated in Government Code section 29550.2, subdivision (a), and ordered defendant to register pursuant to Health and Safety Code section 11590. Defendant appealed without a certificate of probable cause.

People v. Ramborger, No. C075129, 2014 WL 5018612, at *1 (Cal. Ct. App. Oct. 8, 2014).

On appeal, petitioner's counsel filed an opening brief pursuant to People v. Wende, 25 Cal.3d 436 (1979), in which he set forth the facts of the case and requested that the appellate court review the record and determine whether there were any arguable issues. (Resp't's Lod. Doc. 4.) After examining the record, the Court of Appeal found no arguable error that would result in a disposition more favorable to petitioner and affirmed his judgment of conviction. (Resp't's Lod. Doc. 5.) Petitioner did not file a petition for review.

On July 18, 2014, petitioner filed a petition for writ of habeas corpus in the California Superior Court, claiming that his trial counsel rendered ineffective assistance. (Resp't's Lod. Doc. 6.) His claim was described, in full, as follows:

> After discussing a tentative 12 year 8 month deal with DDA Nelson on 3/1/13, Mr. Cintean missed my July 3rd and 10th court dates of 201[sic]. Followed by a visit in county jail to inform me that unless I immediately agreed to the original offer of 18 years 8 months, it would be revoked. I agreed. My next court date, 7/17/13, the offer was raised and my agreement considered invalid. On 7/22/13, I pled to a low of 18 years 8 months with a ceiling of 24 years 8 months, fearing my counsel would continue to ineffectually represent me. On 8/27/13, I was sentenced to 24 years 8 months. I would like to withdraw my plea, as I had every intention of accepting the 18 year 8 month deal before it could expire as evidenced by my agreement.

(Id.) The California Superior Court denied petitioner's claim in a reasoned decision, ruling as follows:

> The Court has received and considered the above-entitled petition for writ of habeas corpus. The petition is **DENIED**.
>
> Petitioner Michael Ramborger filed this petition alleging that he had ineffective assistance of counsel, namely that counsel failed to appear at his July 3 and July 10, 2013 hearings resulting in the lost opportunity for Petitioner to accept a plea bargain for a lesser sentence.

3

> A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case entitling him to relief. (In re Bower (1985) 38 Cal.3d 865, 872.) A petition for writ of habeas corpus should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (People v. Duball (1995) 9 Cal.4th 464, 474.) To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (In re Alvernaz (1992) 2 Cal.4th 924, 937.) It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions. (In re Avena (1996) 12 Cal.4th 694, 722.) Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (Strickland v. Washington (1984) 466 U.S. 668, 694.)
>
> Petitioner claims that trial counsel was not present at his July 3 and July 10, 2013 court dates, resulting in a lost opportunity to accept a plea bargain. There is no evidence supporting this contention. A review of the record shows that Petitioner's appearance was waived at the July 3, 2013 trial readiness conference, but there is no indication that defense counsel was not present at that July 3rd hearing or on July 10th, the first day of trial.
>
> Even assuming that his counsel was not present on those court dates, there is no indication in the record nor has Petitioner included evidence that but for his counsel's absence at those hearing dates he would have accepted the original plea bargain. There is no evidence that the original plea offer was revoked during those dates and although the original offer was made on November 20, 2012, Petitioner concedes that he only agreed to the offer after the July 10th date when his attorney told him that unless he immediately accepted the original offer, it would be revoked. That the prosecutor revoked the first offer before Petitioner could accept does not by itself show ineffective assistance of counsel. A prosecutor may withdraw a plea bargain at any time before a defendant pleads guilty or otherwise detrimentally relies on that bargain. (People v. Cantu (2010) 183 Cal.App.4th 604, 607.) Accordingly, Petitioner has failed to show that there is a reasonable probability that but for the attorney's alleged errors, the result would have been different.

(Resp't's Lod. Doc. 7.)

Petitioner raised the same ineffective assistance of counsel claim in a petition for writ of habeas corpus filed in the California Court of Appeal. (Resp't's Lod. Doc. 8.) That petition was summarily denied. (Resp't's Lod. Doc. 9.) Petitioner raised the claim again in a petition for writ of habeas corpus filed in the California Supreme Court. (Resp't's Lod. Doc. 10.) The Supreme Court denied that petition with citations to People v. Duvall, 9 Cal.4th 464, 474 (1949) (a habeas

petition must state fully and with particularity the facts on which relief is sought; must include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations; and cannot be based on conclusory allegations); and In re Swain, 34 Cal.2d 300, 304 (1949) (a habeas petitioner must allege with particularity the facts supporting his claims and must fully disclose his reasons for delaying in the presentation of those facts). (Resp't's Lod. Doc. 11.)

Petitioner filed his federal habeas petition in this court on January 15, 2015. Respondent filed an answer on April 8, 2015, and petitioner filed a traverse on April 23, 2015.

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that

law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claim**

**A. Background**

In his sole ground for federal habeas relief, petitioner claims that his trial counsel rendered ineffective assistance in failing to notify him of "the pending expiration of my initial offer – resulting in a longer sentence." (ECF No. 1 at 4.)[1] In the traverse, petitioner provides support for this claim by directing the court's attention to the Reporter's Transcript of two hearings in the trial court: one on July 18, 2013;[2] and one on July 22, 2013. During those two hearings,

---

[1] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[2] The Reporter's Transcript on Appeal (RT) reflects that one of these two hearings took place on "Thursday, July 28, 2013." However, a review of the 2013 calendar reflects that July 28 fell on a Sunday. The Clerk's Transcript on Appeal (CT) reflects that a court hearing took place on July 18, at which time a plea offer was discussed. (CT at 00005.) There is no evidence that any hearing took place on July 28. In addition, a common sense review of the conversations during the two hearings reflects that the "July 28" hearing must have taken place before the July 22

petitioner's trial counsel and the prosecutor discussed the status of several plea offers extended to petitioner.

>   On July 18, 2013, the following colloquy occurred:
>
>> THE COURT: . . . The matter was assigned to this department for jury trial. We had some discussion of a possible resolution in the case. It is my understanding that there was initially an offer by the People that has since been withdrawn or had been withdrawn of an 18 year 8 month offer during the course of negotiations prior to the TRC date.
>>
>> And Mr. Chisholm [the prosecutor] was not involved in those discussions. He was not the assigned deputy. That there was a request anyway by Mr. Cintean [petitioner's counsel] for some lesser offer than 18, 8 but no offer less than that was ultimately conveyed prior to Mr. Chisolm taking over the case.
>>
>> And then Mr. Chisolm, in essence, confirmed the 18, 8 offer at the TRC. It was not accepted at that time. And now the offer, as I understand it, is 24, 8. Is that the offer?
>>
>> MR. CHISOLM: Correct.
>>
>> THE COURT: And after some discussions in chambers I think we have came [sic] up with different scenarios as far as what an offer would be. One would be a stipulated sentence of 21 years 8 months with Ramborger waiving all credits that he has thus far accumulated.
>>
>> And the other offer was a lid of 24, 8, 24 years 8 months with a floor of 18 years and 8 months. I think that's essentially what the People's position is as far as an offer.
>>
>> The People as I understand it are willing to keep these offers open until the beginning of jury selection which we intend to begin on Monday if the case doesn't resolve.
>>
>> Mr. Cintean, you probably have some other information that you want to convey, but I think as far as the offer though, is that accurate?
>>
>> MR. CINTEAN: Yes, your Honor. As far as the current offer, that's accurate. As far as the previous offers have gone, the case has gone through I believe two previous deputy district attorneys before Mr. Chisolm had it.

---

hearing. For these reasons, the court will assume that the July 28 date contained in the Reporter's Transcript is a typographical error and that the correct date of the first hearing is July 18. See Fed. R. Evid. 201(b) (the court may take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned).

> We received an offer initially of 18 years 8 months, and initially that offer was rejected. However, that offer was kept open by the District Attorney's Office prior to the preliminary hearing and even after trial was set in this case.[3] The offer of 18 years 8 months, was still open.
>
> I had approached the previous District Attorney, Ms. Nelson, and started discussions with her about something in the low teens, maybe 12 or 13 years, and that was at the TRC. I don't have the exact date, but it was – it wasn't the last TRC. It was the one before that.
>
> It was May 24th. And Ms. Nelson indicated to me that I should call her and she seemed receptive to talk. She did not make any offer at that point less than 18 years. But I indicated to my client on that date that the District Attorney's Office was at least willing to listen and take into consideration something less.
>
> * * *
>
> After that TRC on May 24th, I made a call to the District Attorney's Office prior to the next TRC. And at that time I found out that the new D.A. had changed and it was, in fact, Mr. Chisolm. I had spoken to Mr. Chisolm on the phone regarding the offer.
>
> I asked him whether he would be willing to consider 12 or 13 years, what I had previously approached Ms. Nelson about. He indicated that that would not be an option and that he would not give anything less than 18, 18 years 8 months.
>
> And subsequent to that conversation there was a TRC, again, a trial readiness conference in the home courts. I did, in between that phone conversation and the TRC, I did not have a chance to communicate with my client that – to indicate to him that that offer of 18 years would be gone indeed.
>
> I didn't know whether that offer was going to be gone or not at that point. The TRC came about. Mr. Chisolm was not present. I believe he was on vacation, and my client's presence was waived at that point. He did not even come to court being in custody and the trial date was simply confirmed.
>
> I believe there was an e-mail from Mr. Chisolm indicating that there was no offer at that point, an email to which I was copied on. So I received a copy of that e-mail the night before the TRC. And subsequent to the TRC there was an e-mail indicating that my client's offer had now gone to 24 years 8 months.

---

[3] The Clerk's Transcript on Appeal reflects that one TRC (trial readiness conference) was held on May 23, 2013, and another one was held on July 3, 2013, at which time the trial date was confirmed. (CT at 00005.) The first day of trial was July 10, 2013. (Id.)

10

> And I called then Mr. Chisolm and indicated to him that I did not know that the 18-year offer had been withdrawn. And he indicated that the 18-year offer was not going to be made again and now the offer was 24 years 8 months.
>
> I spoke with my client after that. And I believe it is – it is my client's understanding that – or he did not have any knowledge that the 18 years was going to be gone before he had a chance to take it. And neither did – if I knew that the 18 years was going to be gone, I would have gone and talked to him about that, but we did not know that the 18 years was going to be gone at that point.
>
> So that's where we are at right now. And now we understand that the offer is greater. Even if it is an 18 year floor, it's the top of 24 years 8 months. So the offer is significantly higher than – or his exposure given the offer is higher than it previously was before he had a chance to take it.
>
> And he would have taken it. I can represent to the Court that he would have taken that offer had he known that it was going to be gone.
>
> THE COURT: I should state that . . . the 18, 8 offer had been an early offer that had been made. It was actually rejected by the defendant and then reextended by the People at some point which lead up to where we are today.
>
> MR. CINTEAN: Yes.

RT at 2-6.

At that point, the prosecutor explained his understanding of the situation, as follows:

> MR. CHISOLM: I would just like to note that the TRC that I was on the case for but was not physically present at was conducted on July 3rd at 1:30 in Department 62.
>
> I spoke with Mr. Cintean prior to that and told him there would not be any offer lower than 18, 8. I asked him if he wanted to confirm it for trial, and he told me that he did.
>
> I sent an e-mail subsequent to that conversation. And in that e-mail which Mr. Cintean was on it says, "Currently there is no offer to either defendant. Mr. Ramborger would have to plead to the sheet." That's a quote. Still I had no objection from Mr. Cintean at any time until I filed an amended Information on July 10th that added six prison priors to Mr. Ramborger, and it also deleted the 12022(c) enhancement.
>
> At that time I sent an e-mail delivering the amended Information to Blakely, and Mr. Cintean was on that e-mail as well. And I said at this point if Mr. Ramborger wants to settle the case, he could settle it for 24 years 8 months.

11

1  His total exposure in the case is 30 years 8 months. So the 24 year offer is still a significant discount. He has rejected the 18 year 8 month offer in the past, and he'd had ample opportunity to take it, and he didn't.

(Id. at 6-8.)

Petitioner then addressed the court about his own understanding of the plea offers:

> DEFENDANT RAMBORGER: Your Honor, I only – the information I received is what was given to me, and my only opportunity to do anything is through counsel when counsel is present.
>
> I was at Court May 24th and was told about the possible lower offer. July 3rd I sat in a holding cell. No one came and saw me. July 10th sat in the holding cell. No one came to see me. The evening of July 10th my attorney tells me, hey, you're probably going to lose the offer that I didn't even know – I mean, I still thought that we were working on a lower one if I don't take it that night. So I said yes.
>
> And he e-mails me back to tell me you lost it. I don't know. I mean, is there a hotline I'm supposed to call you guys and tell you, "Hey, I'll take this deal," when I can only do what I can do through the courts. I'm literally bound, you know what I mean? My hands are tied so to speak for anything that I say or do through my attorney and at court.
>
> So I don't understand how everything snow balled on me if I never had an opportunity to stop it from snow balling me. You know what I mean? You're - pardon the expression – screwed. You know that's all I was told. I wasn't told anything otherwise until then.

(Id. at 10.)

Another hearing was held on the following Monday, July 22, 2013. At the beginning of that hearing, petitioner's trial counsel stated that petitioner was willing to accept the prosecutor's previous offer of a stipulated sentence of 18 years, 8 months. (Id. at 14.) Counsel explained:

> I can put on the record that he is willing to enter a plea to – on those terms, which had been the offer prior to this.
>
> And additionally, it is my concern and my belief also that there may be – if Mr. Ramborger ends up with a greater sentence either after trial or after a plea that there may be issues regarding the offer being conveyed and then withdrawn before he could accept it.
>
> * * *

12

> And given that, those concerns – at this point, that's Mr. Ramborger's counteroffer to the People, that he's willing to resolve for 18 years 8 months.

(Id.) The prosecutor did not accept petitioner's "counteroffer" to plead guilty in exchange for a sentence of 18 years, 8 months. After further discussions with his trial counsel, petitioner accepted the prosecutor's offer of "a lid of 24 years, 8 months, a floor of 18 years, 8 months." (Id. at 22.) After a full plea colloquy, the trial court accepted petitioner's plea. (Id. at 40.)

**B. Legal Principles: Ineffective Assistance of Counsel**

The applicable legal standards for a claim of ineffective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted). "Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Richter, 131 S. Ct. at 789. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine

confidence in the outcome." Id.

The Strickland standards apply to claims of ineffective assistance of counsel involving counsel's advice offered during the plea bargain process. Missouri v. Frye, 132 S. Ct. 1399 (2012); Lafler v. Cooper, 132 S. Ct. 1376 (2012); Padilla v. Kentucky, 559 U.S. 356 (2009); Hill v. Lockhart, 474 U.S. 52, 58 (1985); Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler, 132 S. Ct. at 1384 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). As a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1408 (ineffective assistance in failing to communicate a written plea offer before it expired). See also United States v. Blaylock, 20 F.3d 1458, 1466 (9th Cir. 1994) (a trial counsel's "failure to communicate the government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards."). When a defense attorney allows a plea offer to expire without advising the defendant about the offer or allowing him to consider it, "defense counsel did not render the effective assistance the Constitution requires." Frye, 132 S. Ct. at 1408.

In order to show prejudice in the context of plea offers, "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 132 S. Ct. at 1384. Where, as in this case, a plea offer has lapsed or been rejected because of trial counsel's deficient performance and the defendant has later accepted another, less favorable plea offer,

> defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

Frye, 132 S. Ct. at 1409.

////

### C. Analysis

Petitioner claims, in essence, that his trial counsel's ineffective assistance prevented him from accepting the prosecutor's offer of 18 years, 8 months in prison before the offer lapsed. As described above, petitioner alleged in his state court habeas petitions that his trial counsel "missed" two trial readiness conferences but visited petitioner in jail after one of those conferences and told him that he must immediately agree to the prosecutor's offer or the offer would expire. Petitioner claimed that he agreed at that time to accept the offer, but at the next court hearing his acceptance was rejected. Petitioner also stated that he had "every intention of accepting the 18 year 8 month deal before it could expire," as evidenced by his agreement to accept it after the visit by his trial counsel. Petitioner claimed that this scenario demonstrated that his trial counsel's ineffective performance caused him to lose out on the prosecutor's offer.

The transcript of the two court hearings excerpted above reflects the following facts. The original prosecutor on this case offered petitioner a plea deal in which he would serve 18 years, 8 months in prison. Petitioner rejected that offer but it still remained open. When Mr. Chisolm became the assigned prosecutor, he told trial counsel that "there would not be any offer lower than 18, 8." However, the night before the July 3, 2013 trial readiness hearing, trial counsel received an email from the prosecutor which stated that the offer had been withdrawn. Counsel subsequently received another email stating that the offer had now risen to 24 years, 8 months in prison.

Trial counsel was surprised that the offer for 18 years, 8 months was withdrawn; he believed it would remain open. After he received the prosecutor's email advising that the plea offer had now risen to 24 years, 8 months, counsel called the prosecutor and complained that he did not know the 18 year offer had been withdrawn. According to trial counsel, if he had known the offer was going to expire he would have talked to petitioner about it before the expiration date. On July 10, trial counsel told petitioner that unless he immediately agreed to the original offer it might be revoked, and that it might already have expired. At that point, petitioner decided to accept the offer but it was too late.

/////

Based on the facts as summarized above, this court concludes that petitioner's trial counsel did not render ineffective assistance in failing to notify petitioner "of the pending expiration" of the original plea offer because counsel did not know the offer was going to expire. It is clear from the record that the prosecutor decided to withdraw the 18 year, 8 month offer unilaterally. There is no evidence in the record that Mr. Chisolm ever told petitioner's trial counsel that the offer carried an expiration date. Counsel cannot be faulted for failing to inform petitioner of an expiration date of which he was unaware. As noted by the California Court of Appeal, the fact that the prosecutor unilaterally withdrew the plea offer before petitioner could accept it is not improper and does not constitute deficient performance. See People v. Cantu, 183 Cal.App. 4th 604, 607 (2010) (a prosecutor may withdraw from a plea bargain before a defendant pleads guilty or otherwise detrimentally relies on that bargain).[4]

This court also concludes that it was not unreasonable for trial counsel to believe the offer of 18 years, 8 months in prison would remain open until petitioner definitively rejected it. This same offer had apparently been on the table since November, 2012, and it remained open while trial counsel was attempting to negotiate a lower offer with the original prosecutor. After Mr. Chisolm was assigned to the case, the same offer was still open. Under these circumstances, trial counsel could have reasonably believed the offer would remain open until he was notified that it was going to expire.

Nor is petitioner entitled to relief on his claim, if any, that his trial counsel's failure to show up in court on July 3 and July 10, 2013 caused him to miss the deadline for accepting the prosecutor's offer. While there is evidence in the record that the prosecutor was not present in the courtroom for the July 3, 2013 readiness conference, and that petitioner was not brought into the courtroom for either of those hearings, there is no evidence that petitioner's trial counsel was absent for any hearing. (See CT at 00005.) In short, there is nothing in the court record demonstrating that petitioner's inability to accept the 18 year, 8 month offer was the fault of his trial counsel's failure to show up in the courtroom.

---

[4] If trial counsel had known the offer would expire on a certain date but failed to inform petitioner of the offer before it expired, his performance would have been deficient. Frye, 132 S. Ct. at 1408. However, that is not the case here.

1  The California Superior Court found that petitioner failed to demonstrate he was
prejudiced by his trial counsel's allegedly deficient performance because there was no indication
in the record that he would have accepted the government's plea offer on July 3 or July 10.  This
finding is not an unreasonable determination of the facts of this case.  The record reflects that
petitioner had previously rejected the offer for 18 years, 8 months and that he only accepted it
after being told that it was about to, or had, expired.  It is a fair inference from the record that
petitioner would not have accepted the offer absent a clear expiration date or a fixed deadline.
Petitioner's "after the fact testimony concerning his desire to plead, without more, is insufficient
to establish that but for counsel's alleged advice or inaction, he would have accepted the plea
offer." Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1995).  The record also reflects that
the plea offer had been withdrawn by the prosecutor the night before the July 3 court hearing
without prior warning to petitioner's trial counsel.  Accordingly, it appears that petitioner could
not have accepted the offer at either court hearing, even if he had been present.

For the foregoing reasons, petitioner has not demonstrated that his trial counsel rendered deficient performance or that he was prejudiced by any actions of trial counsel.  Accordingly, under either a de novo or the AEDPA standard of review, petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel.

**IV. Conclusion**

For the foregoing reasons, IT IS ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied.

2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

3. The Clerk of Court is directed to close this case.

Dated:  July 6, 2016

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Ramborger120.hc;dmou8(2)